BROOKS *v.* STATE.

Opinion delivered December 1, 1919.

1. HOMICIDE—KILLING PERSON NOT INTENDED.—A defendant will be guilty of murder or manslaughter according to the circumstances of the killing, who, in the attempt to kill one person, by mistake kills a third person, although there was no intent or design to kill such third person.

2. SAME—SAME.—A., intending to shoot B., shot and killed C. *Held,* under the evidence that a verdict of guilty of murder in the second degree was warranted by the evidence.

3. SAME—SAME — INTENT—MALICE — ALLEGATIONS IN INDICTMENT.— When the accused shoots at one man and kills another, malice will be implied as to the latter, and a felonious intent will be transferred; and the indictment must allege that the assault was made on the party actually murdered, in all respects, just as if the party killed had been the party shot at.

4. HOMICIDE—INSTRUCTION—OMISSION OF ELEMENT OF MALICE.—In a prosecution for homicide, accused shot at B. but hit and killed C. *Held,* an instruction is erroneous which directed a verdict against the accused if he unlawfully, wilfully and feloniously killed deceased, leaving out the element of malice; but, *held,* any prejudice resulting may be cured by fixing defendant's punishment at two years in the penitentiary, the lowest punishment for manslaughter.

5. HOMICIDE—SECOND DEGREE MURDER—MALICE.—The leading characteristic of murder in the second degree is the presence of malice distinguishing it from manslaughter and the absence of premeditation and deliberation. No killing is murder unless it is done with malice.

Appeal from Lafayette Circuit Court; *Geo. R. Haynie,* Judge; reversed.

*A. H. Hamiter* and *Stevens & Stevens,* for appellant.

Under the indictment and evidence we contend:

1. That the court erred in allowing the witnesses for the State to give evidence of an assault by Will Brooks on John Law and in refusing instructions 1, 2 and 6 for defendant. On the State's theory Will Brooks killed Irene Crawford in a felonious attempt to kill John Law, but the evidence clearly shows that the killing of Irene was an accident, not intended. The attempt here

failed and the only offense towards John Law was an attempt to commit a felony which failed and the only offense defendant committed was the evil intent he had in making the attempt and this should have been charged. 10 Enc. of Pl. & Pr. 491; 6 Ark. 525; 32 Cyc. 329; 60 Ark. 185; 34 *Id.* 275. The intent is the gist of the offense and must be proved as charged. 22 Cyc. 329; 6 Ark. 519; Kirby's Digest, § 2227. They certainly should be alleged. 33 Ark. 561; 38 *Id.* 519; 93 *Id.* 82; 34 *Id.* 263; 29 *Id.* 68.

2. Instructions 1, 2, 3, 4, 5, 6, 7 and 8 for the State are misleading or at least abstract. 13 Ark. 317.

3. The whole theory of defendant is that if the fatal shot was fired by him the killing was by accident and the evidence proves it was by accident. 3 L. R. A. (N. S.) 1152; 64 S. W. 550; 92 Ga. 601; 27 Fla. 370. In this case it devolved on the State to prove it was not an accident. 3 L. R. A. (N. S.) 1161; 33 S. W. 124; 42 W. Va. 253; 51 Ohio St. 331; 58 S. W. 1013; 59 *Id.* 1114.

4. Instruction No. 11 for the State was prejudicial. There was no evidence to support it and it assumes that defendant killed the woman, and it fails to tell the jury if they believe defendant, that if there was no malice or intent to kill, etc., they should acquit, or at least find a less degree of homicide.

5. Instruction 12 for the State is not justified by the evidence.

6. Instructions directing a verdict for murder must contain the word malice or its equivalent. Kirby's Digest, § 1761; 46 S. W. 675.

7. The court erred in not giving instruction No. 3 for defendant. 74 Ark. 262.

*John D. Arbuckle,* Attorney General, and *Robert C. Knox,* Assistant, for appellee.

1. If a person while attempting maliciously to kill another, unintentionally kills a third person towards whom he had no malice, it is murder, and where one shoots and kills deceased in an effort to shoot another

person, his guilt or innocence is determined by the same consideration that would have governed had he shot such other person. 1 Bishop, New Cr. Law, sec. 336; 74 Ark. 264; 53 Atl. 354; 97 N. W. 992; 90 Mo. 220; 139 *Id.* 220. See also 69 Ark. 177; 38 N. Y. 80; 33 N. E. 739; 76 Ark. 517-518; 55 *Id.* 556; 29 *Id.* 248; 113 *Id.* 142; 8 Montana 432; 22 Pac. 688. 34 Ark. 275, cited for appellant, is in harmony with our own decisions and practically all the States in the American Union.

2. Instructions 1 to 8 and 9 are not error. The latter is based on Kirby's Digest, sec. 1765. These instructions are based upon the evidence which supports them. Only general objections were made by defendant. The word "malice" has often been defined. 1 Bishop Cr. Law 429; 83 S. W. 964. The objections should have been specific. 74 Ark. 431; 94 *Id.* 169; 95 *Id.* 100; 66 *Id.* 264; 80 *Id.* 225; 116 *Id.* 357; 108 *Id.* 508; 106 *Id.* 362; 110 *Id.* 402; 129 *Id.* 180.

3. No error in refusing instruction No. 3 for defendant, as the court was not submitting the question of involuntary manslaughter to the jury at all, and on the whole case the judgment is right.

HART, J. In the case at bar Will Brooks prosecutes an appeal to reverse a judgment of conviction against him for murder in the second degree. The killing occurred in the night time just before Christmas in Lafayette County, Arkansas.

According to the testimony of John Law, a witness for the State, he started home with Irene Crawford from a party or ball at Sip Harrison's house. On their way home Terry Collins ran up to John Law and tried to take a pistol from him, saying that he was in a row with Willie Rushing and wanted the pistol on that account. Law refused to give Collins the pistol and Collins tore Law's raincoat in trying to take the pistol away from him. Will Brooks ran up and with an oath asked Law what he wanted to shoot Terry Collins for. Law answered that he did not want to shoot him. Brooks in reply said, "You are a God damn liar; if you do not be-

lieve Mr. Brooks will do what he says he will, I will show you." About that time Brooks fired his pistol and shot Irene Crawford in the stomach. When Brooks walked up to Law and commenced talking to him, Irene Crawford was standing by the left side of Law with her arm on his shoulder. She said to Law, "Let's go," and back-stepped in front of him. Just at that time Brooks fired his pistol and the ball struck her in the stomach. She said, "Oh, Bud (referring to Will .Brooks), you shot me in the stomach," and fell. Brooks shot again and then Law pulled his pistol in order to save his own life and shot at Brooks. After Irene Crawford fell she was carried into a house near by and died in a short time as the result of her wound. Law said that he had not done anything to Brooks and gave him no cause for shooting at him. There were several eye-witnesses to the killing who corroborated the testimony of Law in every respect.

Will Brooks was a witness for himself. According to his testimony, John Law, Irene Crawford and Terry Collins were standing in the road fussing about something when he approached them. He asked them what was the matter with them. Law had his pistol in his hand and said, "What in the hell have you got to do with it?" Brooks told him that he had nothing to do with it, and Law again cursed Brooks. Brooks then told Law not to curse him and Law pulled the woman to one side and shot at Brooks. Brooks then stepped to the side of Irene Crawford and shot at Law. Law then made two more shots at Brooks. As soon as the woman said that she was shot, Brooks put his pistol in his pocket and went off to get a doctor. Other witnesses testified for the defendant and corroborated his testimony.

(1) At common law, if a person shot at another with malice and by accident or mistake killed a third person, the offense was murder. Under our statute a person will be held guilty of murder or manslaughter according to the circumstances of the killing, who, in the attempt to kill one person, by mistake kills a third person, although

there was no intent or design to kill such third person. *Ringer* v. *State,* 74 Ark. 262; 21 Cyc. 712, and cases cited; Wharton on Homicide (3 Ed.), par. 360, and Michie on Homicide, vol. 1, sec. 17. The rule in such cases is comprehensively stated in volume 1, section 17, of Michie on Homicide, as follows:

"If a man attempt to kill another without justification, without provocation and not under circumstances of mitigation, and in pursuance of that effort hits and kills a third person, his guilt is measured by the same standard as though he had killed the person originally intended. Whether defendant who shot at one person and killed another is guilty of homicide in any of its grades, or not, depends on the character of his act, and his intent, whether criminal or not, as applied to the person whom he intended to shoot. The thing done follows the nature of the thing intended to be done, and the guilt or innocence of the slayer depends upon the same considerations that would have governed had the blow killed the person against whom it was directed. In determining the criminality of the act of killing it is immaterial whether the intent was to kill the person killed or whether the death of such person was the accidental or otherwise unintentional result of the intent to kill some one else. The purpose and malice with which the blow was struck is not changed in any degree by the circumstances that it did not take effect upon the person at whom it was aimed. The purpose and malice remain, and if the person struck is killed, the crime is as complete as though the person against whom the blow was directed had been killed, the lives of all persons being equally sacred in the eye of the law, and equally protected by its provisions. The general rule is that when one person is killed by mistake or accident, the character of the offense is the same that it would have been if the person intended had been killed."

(2) The doctrine of *Lacefield* v. *State,* 34 Ark. 275, to the effect that when one intending to kill A, shoots and wounds B, he cannot be convicted of an assault with intent to kill B, does not apply in cases where the homicide

was committed. Where there is no killing the act fails of effect and the presumption does not arise that every person is presumed to contemplate the ordinary and natural consequences of his acts. It follows that the evidence for the State, if believed by the jury, fully warranted it in returning a verdict of guilty of murder in the second degree.

(3) It is next insisted that the indictment is defective because it charges Will Brooks with killing Irene Crawford with a pistol, "with the wilful, malicious, premeditated and deliberate intent then and there to kill and murder her, the said Irene Crawford," etc. There was no error in the indictment. An indictment for homicide in a case like this must allege the assault as made on the person killed. Where the accused shoots at one man and kills another, malice will be implied as to the latter; and a felonious intent is transferred, on the same ground, as where poison is laid to destroy one person and is taken by another. Hence the felonious intent is thus transferred and the indictment must be drawn accordingly. That is to say, it must allege that the assault was made on the party murdered, etc., in all respects just as if the party killed had been the party shot at. *State* v. *Clark,* 147 Mo. 20; 47 S. W. 886, and Wharton on Homicide, (3 Ed), par. 359.

(4-5) The next assignment of error is that the judgment should be reversed because the court gave instruction No. 13, which is as follows: "You are further instructed that if you believe from the evidence in this case beyond a reasonable doubt that the defendant, in Lafayette County, Arkansas, and within three years before the return of the indictment herein into the court, unlawfully, wilfully, feloniously, but without premeditation or deliberation, shot at witness, John Law, and killed the deceased, you will find him guilty of murder in the second degree, and assess his punishment at some period of time in the penitentiary, not less than five nor more than twenty-one years."

It is insisted that the instruction is erroneous because it directs a verdict, if the jury should find that the

defendant unlawfully, wilfully, and feloniously killed the deceased and leaves out of consideration the element of malice in the killing. Section 1761 of Kirby's Digest defines murder as the unlawful killing of a human being, in the peace of the State, with malice aforethought, either express or implied. The leading characteristic of murder in the second degree is the presence of malice distinguishing it from manslaughter and the absence of premeditation or deliberation. *Reed* v. *State,* 102 Ark. 525. No killing is murder unless it is done with malice. *Sweeney* v. *State,* 35 Ark. 585.

It follows that the court erred in giving the instruction and it was necessarily prejudicial to the right of the defendant because, if the instruction had not been given, the jury might have found him guilty of manslaughter. It does not follow, however, that this prejudice cannot be cured.

The jury found the defendant guilty of murder in the second degree and fixed his punishment at five years in the penitentiary. They would have been warranted in finding the defendant guilty of manslaughter and any prejudice resulting to him may be cured by fixing his punishment at two years, the lowest punishment for manslaughter. If the Attorney General so elects, the judgment will be modified so as to sentence the defendant for manslaughter for a term of two years.

We have examined the other instructions given by the court and find no prejudicial errors in them. The case was fully and fairly submitted to the jury under proper instructions upon competent evidence.

For the error in giving instruction No. 13 as above set forth, the judgment will be reversed and the cause remanded for a new trial, unless the Attorney General within fifteen days elects that the judgment be modified so as to sentence the defendant for manslaughter and fix his punishment at two years in the State penitentiary.