Cite as 2026 Ark. App. 72

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR-25-224

| | | |
|---|---|---|
| CODY GATEWOOD | | Opinion Delivered February 4, 2026 |
| | APPELLANT | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT |
| V. | | [NO. 30CR-22-137] |
| STATE OF ARKANSAS | | HONORABLE MARGARET DOBSON, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

A Hot Spring County jury convicted appellant Cody Gatewood of rape, a Class Y felony. He was sentenced as a habitual offender to fifty years' imprisonment. He now appeals, arguing there was insufficient evidence that the rape was accomplished with forcible compulsion. We affirm.

In September 2020, Gatewood was serving a sentence in the Arkansas Division of Correction for aggravated assault. He had recently been assigned to a new cellmate, J.S., a forty-one-year-old male currently serving a sentence for commercial burglary and criminal mischief. On September 7, J.S. called the Prison Rape Elimination Act (PREA) hotline and left the following message: "I need to talk to someone about stuff I was asked, forced to do. Please help me." Jason Davis, the captain on duty that day at the jail, received J.S.'s message and called him to his office. J.S. told Davis that Gatewood had raped him.

Gatewood's jury trial took place on September 26, 2024. At trial, J.S. testified that on the morning of September 7, 2020, Gatewood returned to their cell from breakfast and woke J.S. up. Gatewood told J.S. he needed to talk to him and to come down from the top bunk. Gatewood told J.S. he had heard other inmates at breakfast talking about how J.S. was "scared of everything" and would not fight back if someone tried to take his property. Gatewood told J.S. that put him "in a bad position" because if other inmates thought his cellmate was weak, it would make Gatewood look weak, too. J.S. testified that he told Gatewood not to worry about it and that he would just ask to be moved from Gatewood's cell. Gatewood responded, "[That is] not how [it is] going to work." He told J.S. that he would protect him but that he "was going to do some things" for him.

J.S. then detailed the sexual encounter. He said that Gatewood "had his penis in his hand" and instructed him to touch it. J.S. testified that he told him no, but Gatewood "was being aggressive talking and saying you're going to do it." Gatewood then told J.S. to "spit on it." J.S. again said no, and he testified that he felt sick to his stomach, was shaking, and "[did not] want to be there." As J.S. was attempting to comply, Gatewood put his hand on the back of J.S.'s head and forced his penis into J.S.'s mouth. J.S. testified that he tried to lift his head, but Gatewood physically prevented him from doing so. He said he was "choking" and "crying," but Gatewood would not let up.

At that point, Gatewood told J.S. "[he was] going to try something different," and he pushed J.S. over the bed and pulled his pants down. J.S. pleaded further with Gatewood to

2

stop, but he pushed him further down onto the bed with his face against the wall and put his penis inside J.S. J.S. testified that he continually pleaded for Gatewood to "please stop."

Gatewood stopped after a few minutes. J.S. believed he was done and started to get up, but Gatewood held him down and put his penis back inside J.S. After about five minutes, Gatewood stepped back and told J.S. to get on his knees; Gatewood tried to put his penis in J.S.'s mouth. J.S. testified that he again told Gatewood he did not want to, but Gatewood replied, "[You are] going to do this." According to J.S.'s testimony, Gatewood then grabbed the back of J.S.'s head and forced his penis into J.S.'s mouth. J.S. testified that he "kept pushing against" Gatewood, trying to get away, but Gatewood would not let him. Gatewood eventually stopped raping J.S. and said, "I know [you are] not enjoying it so I [cannot] enjoy it." J.S. called the PREA hotline later that day once Gatewood had left the cell for lunch. The recording of the call was played for the jury.

J.S. testified that later that same day, Gatewood told him that he was being "called down." J.S. told Gatewood that it was probably because he put in a request to see the Chaplain. J.S. testified that Gatewood was standing up really close to him, face to face, and told him in a threatening tone not to mention his name.

After J.S. told Captain Davis what had happened, he was taken to the ER, and a rape kit was administered. J.S. testified that after the sexual-assault exam at the hospital, he was given medicine before he left because he was having trouble sitting or standing.

At the close of the State's evidence, Gatewood moved for a directed verdict, arguing the State had not proved that the rape was committed by forcible compulsion because there was no evidence he threatened J.S. The circuit court denied the motion.

Gatewood testified in his defense that J.S. told him that "some guys had been trying to extort [J.S.]." At breakfast the morning of the incident, Gatewood asked one of the other inmates to spare J.S. That inmate told Gatewood J.S. lied to him. Upon returning to their cell, Gatewood warned J.S. that when he left their cell, he would "probably have some problems." Gatewood said he promised J.S. he would "stand up" for him if anyone tried to jump him. Gatewood denied that he raped J.S. He speculated that J.S. made the story up in order to be placed in protective custody "because he was intimidated by what could have happened to him if he would have stayed in that environment."

Gatewood renewed his motion for directed verdict at the close of all the evidence. The circuit court again denied the motion. Gatewood ultimately was convicted of rape and sentenced to fifty years' imprisonment. This appeal followed.

On appeal, a motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Barnum v. State*, 2020 Ark. App. 523, 614 S.W.3d 453. Appellate courts affirm the conviction if there is substantial evidence to support it. *Id.* Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion without mere speculation or conjecture. *Id.* The appellate court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

A person commits rape if he engages in sexual intercourse or deviate sexual activity with another person by forcible compulsion. Ark. Code Ann. § 5-14-103(a)(1) (Repl. 2024). "Forcible compulsion" means physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person. Ark. Code Ann. § 5-14-101(3) (Repl. 2024). Physical force is any bodily impact, restraint, or confinement, or the threat thereof. *Johnson v. State*, 80 Ark. App. 79, 94 S.W.3d 344 (2002). The test used to determine whether a rape was committed with the requisite physical force is whether the act was against the will of the party upon whom the act was committed. *Barnum, supra.* The supreme court has held that as long as the act is committed against the victim's will, the "quantum of force" need not be considered. *Brinkley v. State*, 2025 Ark. App. 312, at 3–4, 715 S.W.3d 142, 144.

Gatewood argues that sufficient evidence did not support the element of "forcible compulsion" because J.S. testified that he was never threatened by Gatewood. To support his argument, he relies in part on *Mills v. State*, 270 Ark. 141, 603 S.W.2d 416 (1980), wherein the supreme court held that the element of forcible compulsion must necessarily focus on the accused's conduct and statements, not on the victim's statements or fear.

*Mills* is distinguishable because the victim here described repeated physical restraint and acts against his will. Even after J.S. repeatedly told him no, Gatewood continually used physical force such that J.S. could not resist. While Gatewood may not have threatened physical harm while abusing J.S., he clearly used physical force.

J.S.'s testimony alone is sufficient to constitute substantial evidence to sustain a conviction for rape by forcible compulsion. *See Goodman v. State*, 2009 Ark. App. 262, at 6,

5

306 S.W.3d 443, 446 (reiterating that "our courts have continually held that a rape victim's testimony alone is sufficient and is substantial evidence to support a rape conviction"). And although Gatewood's testimony contradicted J.S.'s testimony, the jury is free to disbelieve the appellant's self-serving testimony and believe the victim's testimony instead. *Id.* Accordingly, we hold that there is sufficient evidence of forcible compulsion and affirm Gatewood's conviction.

Affirmed.

KLAPPENBACH, C.J., and VIRDEN, J., agree.

*Gregory Crain*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.